**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| _____ | : | |
| AL FALAH CENTER, *et al.*, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | Civil Action No. 11-2397 (MAS) (LHG) |
| | : | |
| TOWNSHIP OF BRIDGEWATER, *et al.*, | : | **MEMORANDUM OPINION** |
| | : | |
| Defendants. | : | |
| _____ | : | |

**SHIPP, District Judge**

     This matter comes before the Court upon Defendant[1] Township of Bridgewater's ("Township" or "Defendant") Motion for Summary Judgment. (Def.'s S.J. Mot., ECF No. 77.) Plaintiff[2] Al Falah Center ("Plaintiff" or "Al Falah") filed Opposition. (Pl.'s Opp'n., ECF No. 82.) Defendant filed a Reply. (Def.'s Reply, ECF No. 86-1.) This matter also comes before the Court upon Plaintiff's Motion for a Preliminary Injunction. (Pl.'s Br., ECF No. 79-1.) Defendant opposed Plaintiff's Motion. (Def.'s Opp'n, ECF No. 80.) Plaintiff filed a Reply. (Pl.'s Reply, ECF No. 85.) The Court heard oral argument on Plaintiff's Motion for a Preliminary Injunction. (ECF No. 93.) After careful consideration and for good cause shown, Defendant's Motion for

---

[1] The Defendants in the instant matter include the Township of Bridgewater, the Township of Bridgewater Planning Board, the Township Council of the Township of Bridgewater, and a number of individual defendants named in their official capacities. (Compl.)

[2] Plaintiffs also include Tarek Abdelkader, Yasser Abdelkader, Zahid Chughtai, Babar Farooqi, Nabeela Farooqi, Ayesha Khan, Omar Mohammedi, Amina Mohammedi, and Sara Wallis, all of whom engage in the practices of the Islamic faith. (Compl. ¶ 21.)

Summary Judgment is DENIED in part and GRANTED in part. In addition, Plaintiff's Motion for a Preliminary Injunction is GRANTED.

## I.      **Background**

In accordance with the mandate that the Court construe the facts in the light most favorable to the non-movant, Al Falah, the Court sets forth the facts as follows for purposes of the summary judgment motion.

For over a decade, Plaintiff sought a property upon which to build a permanent mosque. (Compl. ¶ 1, ECF No. 72.)  Plaintiff's extended search concluded when it identified the site of a former hotel, the Redwood Inn, on Mountain Top Road in Bridgewater, New Jersey (the "Property"), as ideal for the purpose of its facility. (Compl. ¶ 2.) Plaintiff alleges that it found the Property attractive because it would not be required to seek a zoning variance under the then-existing law. (Pl.'s Br. 5.) Thus, in October 2010, the Chughtai Foundation (the "Foundation"), established by individual plaintiff Zahid Chughtai, signed a contract to purchase the Property. Plaintiff spent $1,685,000 in acquisition fees for the Property. (Pl.'s SUMF ¶ 2.5, ECF No. 82-1; Compl. ¶ 28.) The Foundation assigned its rights under the contract to Al Falah, which acquired title in April 2012. (Pl.'s Opp'n 17.)

Thereafter, Plaintiff applied for a permit to construct a mosque on the Property.  Al Falah alleges that following its application to the Planning Board, the Township rushed to enact Ordinance 11-03 in an effort to preclude its free exercise of religion. In essence, Plaintiff alleges that the accelerated timeline within which the Township enacted Ordinance 11-03,[3] the zoning

---

[3] With regard to houses of worship, Ordinance 11-03 provides that: "Houses of worship shall be permitted in all zones, except that houses of worship located within any residential zone shall comply with the requirements of Section 126-131(B)." Section 126-131(B) provides that: "The following public streets are identified for uses as set forth elsewhere in the Township Land Use

law which precluded the existence of a mosque at the Property, is strong circumstantial evidence of its intent to discriminate against Plaintiff.

## A. Timeline

For purposes of simplicity, the Court finds the following alleged timeline relevant regarding the enactment of Ordinance 11-03. As previously mentioned, the Property was purchased in fall 2010. On January 6, 2011, Plaintiff applied to the Bridgewater Planning Board to use the Property as a mosque. (Pl.'s SUMF ¶ 1.1.) Plaintiff included with its application a traffic impact analysis that demonstrated that the proposed mosque would generate only a modest addition to traffic. (*Id*. ¶ 1.2.) The Township's traffic consultant analyzed and ultimately agreed with Al Falah's traffic expert. (*Id*. ¶ 1.3.)

On January 17, 2011, the Property was the subject of a news article titled "Mosque propose[d] at former Redwood Inn property in Bridgewater." (*Id*. ¶ 1.8.) The community's response to the article was, at a minimum, hostile. By way of example, reader comments included: "Just another place for terrorists to assemble under the guise of freedom of religion." (*Id*. ¶ 1.9.)

---

Ordinance, and the lots upon which the uses are located thereon shall have principal access on a State Highway or County roadway or on one of the following:
1. Garretson Road from Country Club Road to the US Route 202-206 Overpass;
2. Country Road from New Jersey State Highway Route 28 to Garretson Road;
3. Milltown Road from US Route 22 to US Route 202
4. Prince Rodgers Avenue from County Route 629 (North Bridge Street) to Interstate Route 287 Overpass

For those uses which are required to have principal access on the above referenced streets, the use shall not be permitted if principal access is not on the above referenced streets.

3

On January 18, 2011, members of Al Falah met with the Township Planner, the Township Engineer, and the Planning Board's traffic consultant. (Compl. ¶ 35.) The Township's representatives did not identify any traffic related issues during this meeting. (*Id*. ¶ 35.)

On January 20, 2011, the Township's Administrator, Engineer, Planner, Board Attorney and the Chair of the Planning Board attended a private meeting. At the conclusion of the meeting, the Township Planner drafted a document named "houseworshipamendment.docx." (Pl.'s SUMF ¶ 1.17; Def.'s Resp. ¶ 1.17, ECF No. 86.) Plaintiff alleges that the aforementioned document was a drafted ordinance that would have the effect of precluding approval of Al Falah's application. (Pl.'s SUMF ¶ 1.18; Def.'s Resp. ¶ 1.18.)

A public Planning Board meeting was scheduled for January 24, 2011. Mayor Flannery called a "pre-meeting" scheduled for two hours prior to the public Planning Board Meeting. (Pl.'s SUMF ¶ 1.24; Def.'s Resp. ¶ 1.24.) On January 23, 2011, the Township Administrator sent an e-mail message in anticipation of the pre-meeting that stated: "Will one of you please bring eight (8) copies of the possible ordinance. Thanks." (Pl.'s SUMF ¶ 1.27; Def.'s Resp. ¶ 1.27.) This process, allegedly due to its quickened pace, was described by Council President Norgalis as a "ping-pong game." (Def.'s Resp. ¶ 1.34.)

The attendees at the January 24, 2011 pre-meeting developed a plan for a report to be drafted recommending a new condition on houses of worship which would undermine Al Falah's pending application. (Pl.'s SUMF ¶¶ 1.35-1.38.) This report would be adopted and Ordinance 11-03 would eventually be enacted.

The January 24, 2011 public meeting regarding the application followed the private pre-meeting. At this time, the Al Falah application was met with anti-Muslim prejudice within the community, including internet postings and e-mail correspondence. This alleged hostility

permeated the January 24, 2011 meeting. Residents and members of the general public gathered in the hundreds to voice their objection to Al Falah's application. By way of declaration, individual Plaintiff Sarah Wallis estimated that 400-500 people attended the January 24, 2011 public meeting, of which only 15-20 were members of the Al Falah community. (ECF No. 7-3 ¶¶ 7-9.) Her declaration describes the crowd as agitated and hostile. (*Id.* at ¶ 10.) When the crowd was informed that the meeting would be postponed, a woman was overheard stating that the postponement could be considered a victory since it "gives us more time to plan a strategy to stop this thing." (*Id.* at ¶ 11.) Once the crowd dissipated, however, the Planning Board continued the meeting in regard to Plaintiff's application and authorized the development of a Reexamination Report regarding houses of worship. (Pl.'s SUMF ¶¶ 1.46-1.49.)

Thereafter, Plaintiff asserts that the Township Planner, allegedly without the benefit of an expert report, produced drafted findings (within *two* days) that houses of worship in residential zones could potentially cause traffic issues. (*Id.* ¶ 1.53-1.56.) Specifically, the Planner drafted the Reexamination Report on January 25 and January 26, 2011. (Def.'s Resp. ¶ 1.53.) The Township Planner herself described the report as a "*quickie.*" (Pl.'s SUMF ¶ 1.54.) Plaintiff further asserts that these findings were a mere pretext and that the Township's Engineer produced a report finding that the Property would not cause traffic problems.

On February 8, 2011, the Planning Board adopted the Reexamination Report. (*Id.* ¶ 1.82.) Nine days later, on February 17, 2011, the Township Council proposed a zoning ordinance which had the effect of denying conditional use status for a house of worship at the Property. (Compl. ¶ 6.) (Def.'s SUMF ¶ 8, ECF No. 83.)

On February 28, 2011, the Planning Board ultimately approved a resolution recommending adoption of Ordinance 11-03. At the Planning Board meeting on February 28,

members of the audience shouted, booed, and made statements including "[g]et out of Bridgewater." (Pl.'s SUMF ¶ 1.92-1.95.)

On March 14, 2011, the Township Council adopted Ordinance 11-03. The Planning Board then relied on Ordinance 11-03 to dismiss Plaintiff's application to build a mosque on the Property. Plaintiff asserts that Defendant expeditiously enacted Ordinance 11-03 to avoid the time of application law, which provided that zoning ordinances enacted after May 5, 2011, would be considered under the legal framework as it existed at the time of application.

Plaintiff seeks a preliminary injunction enjoining Defendant from enforcing the Ordinance and directing the Planning Board to consider Plaintiff's application for use of the Property under the legal framework that existed at the time of its application and without consideration of Ordinance 11-03.

### B.        Summary of the Complaint

Count I alleges a violation of 42 U.S.C. § 1983, more specifically the United States Constitution's right to Free Exercise of Religion under the First and Fourteenth Amendments. (Compl. ¶¶ 77-84.) Count II alleges a violation of the New Jersey Constitution's right to Free Exercise of Religion, Article 1, Paragraph 3. (*Id*. ¶¶ 85-89.) Therein, Plaintiff alleges that the Township has imposed a substantial burden on Plaintiff's religious exercise. (*Id*. ¶¶ 85-89.) Count III asserts a Fourteenth Amendment claim that Ordinance 11-03 treats similarly situated persons differently based on religious beliefs. (*Id*. ¶¶ 90-97.) Count IV alleges an Equal Protection violation under the New Jersey Constitution, Article I, Paragraphs 1 and 5. (*Id*. ¶¶ 98-103.)

Counts V, VI, VII, and VIII allege violations under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"). Count V alleges that Defendant has imposed

a substantial burden on Plaintiff's religious exercise and has failed to demonstrate that the burden is in furtherance of a compelling governmental interest and is the least restrictive means of furthering that compelling interest. (*Id.* ¶¶ 104-10.) Count VI alleges that Defendant has violated the anti-discrimination provision of RLUIPA, 42 U.S.C. § 2000cc(b)(2). (*Id.* ¶¶ 111-17.) Count VII alleges that Defendant's actions unreasonably limit religious assemblies, institutions or structures within the jurisdiction. (*Id.* ¶¶ 118-24.) Count VIII alleges that Defendant violated RLUIPA by implementing a land use regulation that treats religious assemblies or institutions on less than equal terms with non-religious assemblies. (*Id.* ¶¶ 125-31.)

Count IX alleges that Ordinance 11-03 is arbitrary, capricious and unreasonable. (*Id.* ¶¶ 132-35.) Count X seeks relief under the Municipal Land Use Law ("MLUL"), N.J. Stat. Ann. § 40:55D-62(a). (*Id.* ¶¶ 136-42.) Specifically, Plaintiff asserts that Defendant has violated the "uniformity" requirement of the MLUL because "houses of worship may be located without access to a State highway or County roadway in some areas of residential districts while access to a State highway or County roadway is required in other areas within the same districts . . . ." (*Id.* ¶¶ 139-40.) Count XI alleges violations of the New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. §§ 10:5-12.5. (*Id.* ¶¶ 143-47.)

### C.    Disputed Material Facts

The following disputed material facts are relevant to the instant motions.[4] Defendant provided the following. Ordinance 11-03 does not prohibit houses of worship in any zone and does not prohibit Plaintiff from building a mosque on the Property. (Def.'s SUMF ¶ 12). Rather,

---

[4] Defendant did not originally submit a Local Civil Rule 56.1 Statement. Nevertheless, Defendant's Motion for Summary Judgment does not evade resolution. Plaintiff's Statement of Undisputed Material Facts, and Defendant's response, in conjunction with Defendant's later filed Statement of Undisputed Material Facts, and Plaintiff's Response, provide ample factual recitation from which the Court can resolve the instant Motions.

Ordinance 11-03 merely requires Plaintiff to seek a conditional use variance pursuant to N.J. Stat. Ann. § 40:55D-70(d)(3). Plaintiff has not sought a conditional use variance. (*Id*. ¶¶ 13, 15.) The application for a variance would be reviewed by the Zoning Board, a quasi-judicial body that operates independently. (*Id*. ¶ 22.) Furthermore, the Township has a long-standing planning policy to protect and preserve residential character and neighborhoods in the R-50 district, where the Property is located. (*Id*. ¶ 32.) Plaintiff disputes each of these asserted facts. (Pl.'s Resp., ECF No. 85-1.) In addition, Plaintiff's Statement of Facts, and Defendant's Response, brought the following additional disputed material facts to the fore.

### 1.    Disputed Material Facts Regarding Substantial Burden on Religious Exercise

Plaintiff states that establishing a religious home is the most important activity for any Islamic community. (Pl.'s SUMF ¶ 2.6.) Plaintiff currently rents space but the landlord has informed Al Falah not to publicly identify the location of the rental space.  (*Id*. ¶ 2.10.) Al Falah sets forth that this rental arrangement is inadequate since it does not permit for any of the communal prayers prescribed by the Qu'ran. (*Id*. ¶ 2.11.) Al Falah also states that burial of the deceased must occur as quickly as possible. As a result, Al Falah's congregants must find a mosque, often at great distances from Bridgewater and friends and family of the deceased. (*Id*. ¶ 2.13.) Al Falah also rents space to provide for the religious education of Al Falah's members' children. (*Id*. ¶ 2.14.)

Defendant asserts it has no knowledge regarding same, and that the Township has identified three sites in the Township for a house of worship compliant with Ordinance 11-03 and informed Al Falah that rental space was available from the Bridgewater-Raritan Board of Education in Bridgewater. (Def.'s Resp. ¶¶ 2.13, 2.14.)   Plaintiff states that the proposed alternative properties are cost prohibitive. (Pl.'s SUMF ¶ 2.23.)

### 2. Disputed Material Facts Related to Futility of a Variance Application

Plaintiff's Statement of Undisputed Material Facts cites fourteen (14) facts which allegedly support its contention that applying before the Zoning Board would be futile. (Pl.'s SUMF ¶¶ 3, 3.1-3.14.) Defendant disagrees with the contention that a variance application would be futile and with all but one of the underlying, supporting factual assertions. (Def.'s Resp. ¶¶ 3, 3.1-3.14.) Plaintiff asserts that a variance application would be subject to appeal before the Council, which would make a determination of denial *de novo*. (Pl.'s SUMF ¶ 3.12.)  Defendant states, in essence, that Plaintiff's statement of the outcome of such proceedings is speculative. (Def.'s Resp. ¶ 3.12.)

### 3. Disputed Material Facts Alleged as to whether Ordinance 11-03 is Arbitrary and Capricious

Plaintiff raises the following, among other, disputed facts: (1) that the Ordinance was passed to preclude Al Falah's application; (2) that traffic studies revealed no traffic problems arising from the proposed mosque; (3) that there was no study of the volume or time of traffic peaks on any roadway in preparation of the 2011 Reexamination Report; and (4) that the roads which were permitted by Ordinance 11-03 exhibited the same characteristics of winding, steep slopes and limited visibility as the local roads excluded by Ordinance 11-03. (Pl.'s SUMF ¶¶ 4.1, 4.5, 4.15; Def.'s Resp. ¶¶ 4.1, 4.5, 4.15.)

### 4. Disputed Material Facts Regarding Ordinance 11-03 Treating Religious Uses on Less Than Equal Terms

Plaintiff asserts that Ordinance 11-03 imposes an additional condition on houses of worship because it requires principal access to certain roads. Defendant disputes same, stating that Ordinance 11-03 applies to four secular and non-secular classes of land subject to regulation under N.J. Stat. Ann. § 40:55D-62. (Pl.'s SUMF ¶ 5.1; Def.'s Resp. ¶ 5.1.)

9

Against this factual backdrop, the Court will first examine Defendant's Motion for Summary Judgment. Plaintiff's Application for an Injunction will be discussed later.

## II.    Analysis

### A.    Relevant Procedural History

Prior to the instant matter being transferred to the Undersigned, the Hon. Joel A. Pisano, U.S.D.J., denied a Motion to Dismiss filed by the Defendant.[5] Defendant argued that Plaintiff's claims were not ripe because Plaintiff has failed to apply for a variance. Judge Pisano stated:

> I conclude as a matter of law that the *County Concrete* case does control the circumstances presented . . . this does present a challenge based on a theory that the law as a whole, the ordinance as a whole is arbitrary, capricious, and unreasonable, I conclude that the . . . complaint . . . does present a facial challenge to Ordinance 11-03 and accordingly and for those reasons, the motion to dismiss on ripeness grounds is denied without prejudice.

(Third Supp. Decl. of Yue Han Chow, Ex. M., 49-50; Pisano Oral Op. 6-29-11, ECF No. 82-5.)

In *County Concrete Corporation v. Town of Roxbury*, the Third Circuit found that a final decision is not required prior to bringing a court challenge when a landowner makes a facial challenge to an ordinance. 442 F.3d 159, 164 (3d Cir. 2006). Therein, the plaintiffs alleged that *the enactment* of an ordinance was discriminatory, arbitrary, capricious, unreasonable, malicious and sought to deprive the plaintiffs of the use of their property, whereas similarly situated properties were not rezoned in the same manner in violation of Equal Protection. *Id.* at 167. The Third Circuit determined that these allegations constituted a facial challenge and were ripe. To the extent Defendant's reliance upon *Brown v. City of Pittsburgh*, 586 F.3d 263 (3d Cir. 2009),

---

[5] To the extent Plaintiff alleges as-applied claims, these are not ripe for judicial review since the Plaintiff has not sought a variance. *See Congregation Anshei Roosevelt v. Planning and Zoning Bd. of Borough of Roosevelt*, 338 F. App'x 214, 218-19 (3d Cir. 2009).

urges otherwise, the Court is not persuaded and adheres to the decision rendered by Judge Pisano regarding ripeness.[6]

### B.     Summary Judgment Standard

Summary judgment is appropriate if the record shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A district court considers the facts drawn from the "materials in the record, including depositions, documents, electronically stored information, affidavits . . . or other materials" and must "view the inferences to be drawn from the underlying facts in the light most favorable to the party opposing the motion." Fed. R. Civ. P. 56(c)(1)(A); *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002) (internal quotations omitted). The Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242,

---

[6] The law of the case doctrine recognizes that "as a matter of comity a successor judge should not lightly overturn decisions of his predecessors in a given case." *Fagan v. City of Vineland*, 22 F.3d 1283, 1290 (3d Cir. 1994). "The law of the case operates only to limit reconsideration of the same issue." *Id.* However, "there may be exceptional circumstances under which the rule is not to be applied." *TCF Film Corp. v. Gourley*, 240 F.2d 711, 714 (3d Cir. 1957). "Under the law of the case doctrine, once an issue is decided, it will not be religitated in the same case, except in unusual circumstances." *Hayman Cash Register Co. v. Sarokin*, 669 F.2d 162, 165 (3d Cir. 1982). "The purpose of this rule is to preserve the orderly functioning of the judicial process." *Id.* at 168 (internal quotation and citation omitted).

Regarding Defendant's exhaustion argument, Plaintiff's SUMF references the manner in which the Hindu Temple in Bridgewater suffered a five year delay before its variance was approved. (Pl.'s SUMF ¶ 3.14.) This fact may, on its face, indicate Plaintiff's application would not be futile. Plaintiff's SUMF, however, notes that the pendency of the Hindu Temple's application included "many hearings before [the zoning board], lawsuits in both state and federal court, and investigation by the Department of Justice." (*Id.*) Construing the inferences from the Hindu Temple's arduous application process in the light most favorable to Plaintiff, and also taking note of the alleged public consternation regarding Al Falah's Application, it is reasonable to conclude that any further application to the planning board or the council would be futile. As such, the Court concludes no extraordinary circumstances exist supporting a reversal of Judge Pisano's previous holding regarding exhaustion of administrative remedies.

11

251-52 (1986). More precisely, summary judgment should only be granted if the evidence available would not support a jury verdict in favor of the nonmoving party. *Id.* at 248-49. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247-48.

### C. Plaintiff's Constitutional & RLUIPA Claims

#### 1. Count I: Violation of the First and Fourteenth Amendments in Violation of 42 U.S.C. § 1983

##### a. Standard

Count I of Plaintiff's Complaint alleges a violation of the Free Exercise Clause. Pursuant to the Free Exercise Clause of the First Amendment of the United States Constitution, made applicable to local government by the Fourteenth Amendment, no law may prohibit the free exercise of religion. *Lighthouse Inst. for Evangelism, Inc. v. City of Long Branch*, 510 F.3d 253, 273 (3d Cir. 2007).

##### b. Parties' Positions

Defendant argues that "[Plaintiff] cannot prove that [Ordinance] 11-03 imposes a substantial burden on [its] religious exercise [because it has] failed and refused to avail [itself] of [its] right to prosecute an application for a variance before the Zoning Board." (Def.'s S.J. Mot. 26.) Plaintiff argues that "[t]he evidence demonstrates that Bridgewater enacted the Ordinance in response to anti-Muslim animus; it imposes a substantial burden on the exercise of Plaintiff's religion; it is arbitrary and capricious; and it cannot survive strict scrutiny." (Pl.'s Opp'n 44.)

##### c. Discussion

The relevant analytical framework is set forth in *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (1993). In *Lukumi*, the Court examined an ordinance that

allegedly impacted religious exercise. *Id.* As an initial matter, the Court evaluates the text in order to determine the object of a law. *Id.* The Court notes that facial neutrality is *not* determinative. *Id.* Rather, the Court may rely on supporting evidence whether direct or circumstantial. *Id.* Notably, *Lukumi* requires that the Court evaluate "the historical background of the decision under challenge, the specific series of events leading to the enactment or official policy in question, and the legislative or administrative history, including contemporaneous statements made by members of the decisionmaking body." *Lukumi*, 508 U.S. at 540 (internal citations omitted).

 "[I]f the object of a law is to infringe upon or restrict practices because of their religious motivation, the law is not neutral[.]" *Id.* at 533. "The Free Exercise Clause . . . extends beyond facial discrimination. The Clause forbids 'subtle departures from neutrality[.]'" *Id.* at 534 (internal citation omitted). *Lukumi* requires that "the Court . . . survey meticulously the circumstances of governmental categories to eliminate, as it were, religious gerrymanders." *Id.*

Furthermore, a legislature must not "defer[ ] to the [discriminatory] wishes or objections of some fraction of the body politic." *City of Cleburne, Texas v. Cleburne Living Ctr.*, 473 U.S. 432, 448 (1985). Thus, the Court examines whether a reasonable jury could infer from this record that private citizens' "hostility motivated the City in initiating . . . its . . . efforts." *Tsombanidis v. West Haven Fire Dep't.*, 352 F.3d 565, 580 (2d Cir. 2003).

As it relates to Ordinance 11-03, the Court will not grant Defendant's Motion for Summary Judgment on Plaintiff's federal Free Exercise claim. In light of the standard for summary judgment, which calls the facts to be viewed in Plaintiff's favor, and giving Plaintiff the benefit of all reasonable inferences, "it cannot be said, as a matter of law, that the Mosque

was not being singled out for discriminatory treatment." *Albanian Associated Fund v. Twp. of Wayne*, No. 06-3217 (PGS), 2007 WL 2904194, at *13 (D.N.J. Oct. 1, 2007).

Here, the Court is faced with disputed material facts as it relates to the alleged discriminatory intent of Defendant. The Supreme Court has noted that "the effect of a law in its real operation is strong evidence of its object." *Lukumi*, 508 U.S. at 535. Here, the effect of Ordinance 11-03, which prevented the establishment of Al Falah's mosque, is evidence of Defendant's objective. In *Lukumi*, the Supreme Court noted that the record "evidence[d] significant hostility exhibited by residents." 508 U.S. at 541.

Similarly here, Plaintiff alleges that the residents exhibited such hostility. (*See* Pl.'s SUMF, ¶ 1.95, stating that when Al Falah's supporters spoke during the meeting, many in the audience could be heard saying things like "Get out of here," "Get out of Bridgewater," and "Go somewhere else.") Furthermore, although disputed, a Defendant council member's alleged statement reflecting that Al Falah's existence at the Property would be very difficult supports a reasonable inference that the animus of the residents was a motivating factor in the ultimate, rather expeditious, enactment of the Ordinance.   (Pl.'s SUMF ¶ 1.111.) Specifically, Council member Christine Henderson-Rose allegedly: 1) urged Al Falah to build its Mosque on different property, and 2) stated that, even if its Application was approved, any future applications to make any modifications to the Property would be heavily scrutinized. (*Id.* ¶ 1.111) (ECF No. 29-2 ¶¶ 6-7.) These disputed facts directly speak to Defendant's alleged discriminatory intent. Accordingly, summary judgment as to Count I is denied.

### 2. Count II: Free Exercise of Religion Pursuant to the New Jersey Constitution

#### a. Standard

Count II alleges a violation of the New Jersey Constitution, which provides in relevant part, that "[n]o person shall be deprived of the inestimable privilege of worshipping Almighty God in a manner agreeable to the dictates of his own conscience[.]" N.J. Const. art. I, ¶ 3.

For purposes of an alleged violation of the free exercise clause under New Jersey's Constitution, "[the Court] must determine whether the ordinance imposes a significant burden on religious practice." *Jehovah's Witnesses Assembly Hall of S. New Jersey v. Woolwich Twp. of New Jersey*, 223 N.J. Super. 55, 60 (App. Div. 1988).

#### b. Discussion

For the reasons set forth in relation to Plaintiff's Substantial Burden challenge under RLUIPA, and as discussed in regard to Plaintiff's federal Free Exercise claim, the Court finds that there are genuine issues of material fact that preclude summary judgment on Count II. Specifically, Plaintiff has set forth that the Property is uniquely situated to advance its religious purposes and that the Defendant's actions have caused a substantial burden to the exercise of religion. As such, disputed material facts preclude summary judgment as to Count II of Plaintiff's Complaint.

### 3. Count III: Fourteenth Amendment Equal Protection

#### a. Standard

The Fourteenth Amendment provides that "No state . . . shall deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. The Court's analysis of Plaintiff's equal protection claim under the federal constitution is governed by "the well-established principle that, in the federal Constitutional universe, federal courts accord substantial

15

deference to local government in setting land use policy . . . ." *Congregation of Kol Ami v. Abington Twp.*, 309 F.3d 120, 125 (3d Cir. 2002).  This deference, however, is not boundless. Where the government creates distinctions between similarly situated uses that are not rationally related to a legitimate state goal, then the Court is free to "upset" the land use policy. *Id.*

By way of example, "bare animus towards a group or 'fear, unsubstantiated by factors which are properly cognizable in a zoning proceeding'" may constitute sufficient evidence for a zoning ordinance to fail under an equal protection challenge. *Id.* at 135. (quoting *Cleburne*, 473 U.S. at 448). Plaintiff's equal protection challenge of Ordinance 11-03 calls for a "two-step inquiry." *Id.* at 137. First, the Court must determine if the uses are "similarly situated" and, second, whether there is a rational basis for distinguishing between them. *Id.* at 137.

### b.    Parties' Positions

Defendant argues that summary judgment is appropriate on Plaintiff's Fourteenth Amendment Equal Protection claim because Plaintiff has not received a final determination from the Zoning Board, thus Plaintiff is merely required to apply for a variance. Defendant also argues that Plaintiff has failed to identify any entity that is similarly situated in relation to the Township's purpose. (Def.'s S.J. Mot. 33.) Defendant argues that even assuming that Plaintiff identified a similarly situated entity, Ordinance 11-03 passes rational basis. (*Id.*) According to Defendant, Ordinance 11-03 protects and preserves the "residential character and neighborhoods, rooted in planning policies dating back to 1976." (*Id.*) Defendant alleges it has a legitimate interest in preserving and protecting the integrity of quiet enjoyment in residential neighborhoods, which is rationally related to the road access condition enumerated in Ordinance 11-03.

Plaintiff cites to its RLUIPA Equal Terms argument, in which Plaintiff argues that municipal buildings are entities that are similarly situated, but Plaintiff is treated in a disparate manner. (Pl.'s Opp'n 38-43, 45.) Further, although Plaintiff concedes that the "Ordinance is subject to review under the 'rational basis' test" it argues, in sum, that the record reflects that Defendant has produced no evidence that the Ordinance "would achieve any legitimate objective." (*Id*. at 45.)

### c.    Discussion

Four months prior to Al Falah submitting its application to develop a mosque, the Township developed a Reexamination Report. (ECF No. 79-17, PX 58.) This report did not identify any issues concerning traffic related to houses of worship. (Pl.'s SUMF ¶¶ 1.62-1.65.)

Al Falah's application to develop a mosque included numerous expert reports and studies, including a traffic impact analysis. (Pl.'s SUMF ¶ 1.1; ECF No. 72-12, PX 39, at 79.) Al Falah's traffic impact analysis concluded that "[t]he site development for a worship center that includes a day care and elementary school is anticipated to generate only modest levels of new traffic activity." (ECF No. 72-12, PX 39, at 90.) Moreover, "[a]ll worship and prayer services will take place outside of the typical commuter hours. Only the daycare and elementary school will contribute traffic principally when the morning commuter peaks occur, however sufficient roadway and intersection capacity is available during all times." (*Id.*)

After the submission of Plaintiff's application, the Township hired a Special Planning Board Traffic Consultant, Gordon Meth. (Pl.'s SUMF ¶ 1.3.) According to Plaintiff, the Special Planning Board Traffic Consultant's Traffic Impact Analysis "concluded that the proposed mosque at the Redwood Inn site would not create any significant increase in traffic in the surrounding area." (ECF No. 7-8; Pl.'s SUMF ¶ 1.3.)

17

Township Planner Scarlett Doyle's January 13, 2011 Memorandum advised that Plaintiff sought the facility to accommodate: 500 people for special services held twice a year; 250 people on Fridays; daily worship services of 5-20 people; religious classes of 120 students on Saturdays; a daycare center for approximately 40 children; and an elementary school for approximately 235 students. (ECF No. 79-12 at 10.)

Ms. Doyle drafted an additional Memorandum to the Bridgewater Township Council on March 2, 2011. (ECF No. 79-11 at 92.) That Memorandum provided that:

> [H]ouses of worship have expanded their traditional role, now supporting such activities as self-help meetings, day care, homeless shelters, schools, recreation and social events. Like the school located in a residential setting, the result is that these sites create increased traffic demands on the otherwise low-traffic volumes of the residential neighborhood.

Furthermore, the Memorandum stated that "the impact on the neighborhood can be disruptive to the residential community in which it is located." (ECF No. 79-11 at 93.) The Memorandum also cited external sources for the proposition that "[i]n previous years, churches drew primarily from the neighborhood in which they were located. Today, the area they serve may be considerably larger. Care should be taken in drafting any ordinance regulating places of worship to ensure that the accessory uses do not become nuisances." (ECF No. 79-11 at 93.)

Plaintiff asserts that the Township Planner did not conduct any traffic related studies in developing her memoranda. (Pl.'s SUMF 1.67.)

The Third Circuit's decision in *Rogin v. Bensalem Township* merits discussion. 616 F.2d 680 (3d Cir. 1980). In *Rogin*, the Third Circuit analyzed an equal protection challenge where it was alleged that zoning amendments were passed with the purpose of discrimination. *Id.* at 687. The Third Circuit relied on Supreme Court authority for the proposition that "we will not overturn such a statute unless the varying treatment of different groups or persons is so unrelated

18

to the achievement of any combination of legitimate purposes that we can only conclude that the legislature's actions were irrational." *Id.* (internal quotation and citation omitted).

> In equal protection cases, [the court] may determine the city council's object from both direct and circumstantial evidence. Relevant evidence includes, among other things, the historical background of the decision under challenge, the specific series of events leading to the enactment or official policy in question, and the legislative or administrative history, including contemporaneous statements made by members of the decision making body. These objective factors bear on the question of discriminatory object.

*Lukumi*, 508 U.S. 520, 540 (1993) (internal citations omitted).

In analyzing the circumstantial evidence, the animus held by the residents of the Defendant's community, in addition to the expedited nature of the implementation of the Ordinance, at a minimum, creates a genuine issue of material fact such that summary judgment would be inappropriate at this juncture. Specifically, Council President Norgalis testified by way of his deposition that he has *never* known the process of adopting an ordinance after a reexamination report to operate as quickly as was the case of Ordinance 11-03. (Norgalis Tr. at 232:17-20, ECF No. 79-10, at 100.) Furthermore, as discussed below in connection with Plaintiff's Equal Terms claim, there remain genuine issues of material fact regarding the adequacy of municipal buildings as a comparator subject to more favorable treatment under Ordinance 11-03. The Court cannot conclude, based on the disputed factual record currently before it, that Ordinance 11-03 passes rational basis as a matter of law. Accordingly, the Defendant's motion for summary judgment as it relates to Count III is denied.

### 4.      Count IV: Equal Protection under New Jersey State Constitution

The New Jersey Constitution provides: "No person shall be denied the enjoyment of any civil or military right, nor be discriminated against in the exercise of any civil or military right,

nor be segregated in the militia or in the public schools, because of religious principles, race, color, ancestry or national origin." N.J. Const. art. I, ¶ 5.

In evaluating an Equal Protection claim under the New Jersey Constitution, the Court employs a balancing test. "In striking the balance, [the Supreme Court of New Jersey] ha[s] considered the nature of the affected right, the extent to which the governmental restriction intrudes upon it, and the public need for the restriction." *Brown v. City of Newark*, 113 N.J. 565, 573-74 (1989) (internal quotation and citation omitted). In essence, the New Jersey Constitution protects against the unequal treatment of those who should be treated alike. *Lewis v. Harris*, 188 N.J. 415, 442 (2006). The Ordinance will satisfy the State constitution, on balance, if it does not unduly restrict the right of the Plaintiff to free exercise of religion. "Although stated differently, an equal protection analysis of rights under article I, paragraph 1 of the New Jersey Constitution, like an analysis of equal protection and due process under the Fourteenth Amendment of the United States Constitution, may lead to the same results." *Brown*, 113 N.J. at 573-74. For the reasons set forth above with regard to Plaintiff's claims regarding federal equal protection, Defendant's motion for summary judgment as it relates to Plaintiff's state equal protection claim is similarly denied.

### 5.      Count V: RLUIPA Substantial Burden Provision

#### a.      Standard

Plaintiff alleges that Ordinance 11-03 violates RLUIPA's provision that requires land use regulations that substantially burden religious exercise to be the least restrictive means to advance a compelling governmental interest. 42 U.S.C. § 2000cc(a). In order to prevail, Plaintiff must establish that Ordinance 11-03 imposes a substantial burden on religious exercise. Religious exercise is defined as including "any exercise of religion, whether or not compelled by,

or central to, a system of religious belief" which further includes "the use, building, or conversion of real property for the purpose of religious exercise . . . ." 42 U.S.C. § 2000cc-5. "[A] land-use regulation that imposes a substantial burden on religious exercise is one that necessarily bears direct, primary, and fundamental responsibility for rendering religious exercise-including the use of real property for the purpose thereof within the regulated jurisdiction generally-effectively impracticable." *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 761 (7th Cir. 2003) ("*CLUB*").

In *CLUB*, the Court held that the challenged land use ordinance did not render impracticable the use of real property for religious exercise. *Id.* According to the *CLUB* court, the expenditure of considerable time and money does not amount to a substantial burden under RLUIPA. The Third Circuit has cited *CLUB* favorably for the proposition that where a plaintiff operated a rented facility within the district, the opportunity for religious exercise was not curtailed (and a likelihood of success on the merits could not be established). *See Lighthouse Inst. for Evangelism*, *Inc. v. City of Long Branch*, 100 F. App'x 70, 77 (3d Cir. 2004).

### b.    Parties' Positions

Defendant argues that Plaintiff cannot establish a substantial burden because it has failed to apply for a variance before the Zoning Board. (Def.'s S.J. Mot. 26.) Defendant further argues that houses of worship are not zoned out of the Township, but remain permissible in all zoning districts. (*Id.* at 26.) Defendant states that Ordinance 11-03 merely adds an access road condition for uses in residential zoning districts. (*Id.*) Defendant further states that, even if Plaintiff were to establish a substantial burden, Ordinance 11-03 advances a compelling governmental interest. (*Id.* at 27.) Specifically, Defendant argues that Ordinance 11-03 "is grounded in sound planning and is intended to locate houses of worship and other assemblages on roads that are better suited

to the regional or potential regional character of these assemblages." (*Id.*) According to Defendant, Ordinance 11-03 furthers the compelling governmental interest of preserving and protecting residential neighborhoods by the least restrictive means.

Plaintiff asserts that it is without a suitable site for a mosque and is therefore "religiously homeless." (Pl.'s Opp'n 16-17.) Plaintiff further states that the Mosque is a spiritual home and that "[e]stablishing a mosque is therefore the most important activity for any community in Islam." (*Id.* at 17-18.)  In absence of a mosque, Plaintiff contends it is "next to impossible . . . to follow [the] fundamental tenets of Islam." (*Id.* at 18.) Plaintiff alleges that "travel to and from the nearest established mosque is simply too burdensome." (*Id.*) Plaintiff utilizes a rental facility, which it alleges is not suitable both because of its limited availability and cost. (*Id.* at 18-19.) Al Falah also has to rent facilities for important religious holidays. (*Id.* at 19.) As an example of the inadequacy of its rental facilities, Al Falah contends that a hall rented in a neighboring town rendered "it necessary for women to pray in closets or near bathrooms, which is degrading and unacceptable for Islamic religious practices." (*Id.* at 20.) Plaintiff also alleges that its rental of classroom facilities to educate its youth community causes a financial burden. (*Id.* at 21.) Plaintiff further asserts that the lack of a permanent religious facility prevents the "finding [of] a dedicated Imam, or spiritual leader." (*Id.* at 22.)  Plaintiff asserts that this places a burden on Al Falah in arranging for volunteers to speak during prayer and holiday celebrations and on the volunteers themselves to provide sound religious guidance. (*Id.*) Plaintiff further alleges that in absence of a mosque, rather than a ritual prayer taking place within a mosque, Plaintiff (on at least one occasion) was required to make accommodations for funeral services at a "distant and unfamiliar mosque." (*Id.* at 23.)

### c.   Discussion

Plaintiff's legal argument regarding its "substantial burden" arises in two forms. First, Plaintiff alleges that seeking a variance would amount to a burden. (*Id*. at 23-29.) Second, Plaintiff states that there are no alternative properties available to Al Falah. (*Id*. at 29.) As an initial matter, the Court adheres to the obligation to construe all inferences in favor of Plaintiff and recognizes that it is outside its province to question religious practice and Plaintiff's religious beliefs. For the reasons discussed below, summary judgment will be denied as the Court cannot conclude as a matter of law that there has not been a substantial burden.

 In the context of facial challenges, case law generally reveals that a plaintiff's claims have failed to demonstrate substantial burden when they cannot establish the unavailability of alternative sites. The Third Circuit has held that a plaintiff "did not establish a likelihood of success on its 'substantial burdens' RLUIPA claim . . .  because it had operated for years at the rented location in the district and thus its opportunity for religious exercise was not curtailed by the Ordinance." *Lighthouse Inst. for Evangelism Inc. v. City of Long Branch*, 100 F. App'x 70, 76-77 (3d Cir. 2004). The Third Circuit followed the reasoning set forth in *CLUB*.

In *CLUB*, the Seventh Circuit held that a Chicago Zoning Ordinance did not facially impose a substantial burden. 342 F.3d at 761. In reaching this conclusion, *CLUB* rebuffed the plaintiff's assertions that the scarcity of affordable property, the expense involved in securing property, and the procedural requirements and the necessary approvals amounted to a substantial burden. Rather, the Seventh Circuit held that these conditions did "not render impracticable the use of real property . . . for religious exercise, much less discourage churches from locating or attempting to locate in Chicago." *Id.* at 761.

The Ninth Circuit similarly followed *CLUB*. In *San Jose Christian College v. City of Morgan Hill*, the court set forth the plain language definition of substantial burden as follows:

> A "burden" is "something that is oppressive." Black's Law Dictionary 190 (7th ed. 1999). "Substantial," in turn, is defined as "considerable in quantity" or "significantly great." Merriam–Webster's Collegiate Dictionary 1170 (10th ed. 2002). Thus, for a land use regulation to impose a "substantial burden," it must be "oppressive" to a "significantly great" extent. That is, a "substantial burden" on "religious exercise" must impose a significantly great restriction or onus upon such exercise.

360 F.3d 1024, 1034 (9th Cir. 2004).

The plaintiff in *Morgan Hill* set forth its substantial burden as an inability to carry on its missions of "Christian education" and "transmitting [] religious beliefs." *Id.* at 1035. The court found that the challenged ordinance did not restrict religious exercise, but merely required submission of a completed application. *Id.* The court determined that the City's regulations did "not render religious exercise effectively impracticable" and that there was no evidence demonstrating that the plaintiff "was precluded from using other sites within the city." *Id.*

While employed in the inmate context, the Third Circuit's "substantial burden" standard, as enunciated in *Washington v. Klem*, stated that "a substantial burden exists when a follower is forced to choose between following the precepts of her religion and forfeiting benefits, on the one hand, and abandoning one of the precepts of her religion in order to accept work, on the other hand." 497 F.3d 272, 278 (3d Cir. 2007) (internal quotations omitted, citation omitted); *see also Church of Universal Love and Music v. Fayette Cnty.* No. 06-872, 2008 WL 4006690 (W.D. Pa. Aug. 26, 2008).

Here, as it relates to Defendant's argument regarding the absence of a substantial burden, there "are disputed facts as to whether alternative sites are available or are affordable." *Albanian Associated Fund*, 2007 WL 2904194, at *9-*10 (denying defendant's summary judgment motion

24

and holding that "fact finder could reasonably determine that the Township's actions have created a substantial burden on the Mosque."). Plaintiff alleges that its religious practices are burdened due to the inadequacy of rental facilities. Furthermore, Plaintiff argues at length that no alternative properties are available to Al Falah. (Pl.'s Opp'n 29) ("Defendants have identified only three sites that they contend would be permitted locations for a mosque under Ordinance 11-03 . . . [and] only two of these sites are on the market . . . [t]he land acquisition costs alone for these sites—$2,850,000 and $21,000,000, respectively—make them economically infeasible[.]").[7]

Relying on *Washington* for the proposition that an allegedly palatable alternative does not cure a substantial burden, this district has previously held that "just because plaintiffs in this case can practice some aspects of their religion in [an alternative] facility does not mean there is no substantial burden on their religious exercise." *Albanian Associated Fund*, 2007 WL 2904194, at *9-*10. With this set of facts, construed in favor of Plaintiff, summary judgment cannot be granted. The Defendant cannot demonstrate as a matter of law that Plaintiff has failed to establish that it is suffering a substantial burden.[8] Accordingly, Defendant's Motion for summary judgment as to Count V is denied.

### 6. Count VI: RLUIPA Non-Discrimination Provision

#### a. Standard & Parties' Positions

Defendant argues that in order to establish this RLUIPA claim the Plaintiff must demonstrate "(1) that it was treated differently from other similarly situated religious assemblies or institutions, and (2) that the [Township] unequally applied a facially neutral ordinance for the

---

[7] Plaintiff asserts it would also have to first recoup the $1,685,000 it has spent in acquisition fees for the Property. (Pl.'s SUMF, ¶ 2.23.)

[8] *See* preliminary injunction discussion for an analysis of the Defendant's assertions of application of the least restrictive means in furtherance of a compelling governmental interest.

purpose of discriminating against [the plaintiff.]" *Church of Scientology of Georgia, Inc. v. City of Sandy Springs, Ga*., 843 F. Supp. 2d 1328, 1361 (N.D. Ga. 2012.) Defendant further contends that Plaintiff does not identify a similarly situated religious assembly or institution. Rather, according to Defendant, Plaintiff alleges that it is treated differently and is subject to different standards than those applied in the past. (Def.'s S.J. Mot. 36.) Defendant argues that Ordinance 11-03 merely establishes a road access requirement, or in the alternative, the requirement to seek a conditional use variance. Defendant argues that no evidence exists that these conditions were put in place to discriminate against the Plaintiff based on religion or religious denomination.

Plaintiff alleges that Defendant has violated the non-discrimination provision of RLUIPA, which provides "No government shall impose or implement a land use regulation that discriminates against any assembly or institution on the basis of religion or religious denomination." 42 U.S.C. § 2000cc(b)(2).

### b.    Discussion

In order to demonstrate a claim under RLUIPA's non-discrimination Provision, Plaintiff must establish that (1) it is an assembly or institution, (2) subject to a land use regulation, (3) which has been imposed or implemented in a manner that discriminates on the basis of religion. 42 U.S.C. § 2000cc(b)(2).

There are a number of genuine issues of material fact that preclude resolution of Plaintiff's claim under the non-discrimination provision at the summary judgment stage. For the reasons stated regarding the Court's determination to deny summary judgment as to Plaintiff's Free Exercise Claim, the RLUIPA non-discrimination claim must similarly be denied. In essence, construing the inferences from the facts in favor of Plaintiff, the Court cannot determine as a matter of law that Plaintiff has not been subjected to discrimination. As set forth above in

the factual background as it relates to discrimination, the Parties disagree as to whether there was any discrimination in the imposition or implementation of Ordinance 11-03. Specifically, Plaintiff plausibly alleges that, based on circumstantial evidence, they will be able to demonstrate that they were subject to discrimination. Summary judgment as to Count VI of Plaintiff's Complaint is denied.

### 7.    Count VII: RLUIPA Unreasonable Limitations

#### a.    Standard

Count VII alleges violation of RLUIPA's provision that no government shall impose or implement a land use regulation that unreasonably limits religious assemblies, institutions, or structures within a jurisdiction. 42 U.S.C. § 2000cc(b)(3).

#### b.    Parties' Positions

Defendant argues that it did not violate RLUIPA's unreasonable limitations prohibition. 42 U.S.C. § 2000cc(b)(3)(B). (Def.'s S.J. Mot. 37.) Plaintiff argues that whether Defendant violated RLUIPA's unreasonable limitation provision must be determined in light of all of the facts and that Ordinance 11-03 arbitrarily prohibits houses of worship from over 75% of the previously available roadway frontage in Bridgewater. (Pl.'s Opp'n 44.)

#### c.    Analysis

RLUIPA calls for broad construction and "shall be construed in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of this chapter and the Constitution." 42 U.S.C. § 2000cc-3(g).

Both Parties rely primarily on *Vision Church v. Village of Long Grove*, 468 F.3d 975 (7th Cir. 2006). The plaintiff in *Vision Church*, a religious corporation, purchased a vacant plot intending to build a church. *Id.* at 981. The plaintiff was required to obtain a special use permit

to build and operate its church in a residential district. *Id.* at 990. Plaintiff brought a claim under RLUIPA alleging that the requirement to obtain a special use permit "unreasonably limits religious assemblies . . . within a jurisdiction." 42 U.S.C. § 2000cc(b)(3).

Relying upon the legislative history of RLUIPA, the court stated "what is reasonable must be determined in light of all the facts, including the actual availability of land and the economics of religious organizations." *Vision Church*, 468 F.3d at 990 (internal citation and quotation omitted). The court found that requiring a special use permit was "neutral on its face and [was] justified by legitimate, non-discriminatory municipal planning goals." *Id.* at 991. The court recognized the municipality's goals as "limiting development, traffic, and noise." *Id.* Further, the court noted that the Village required secular institutions to be "approved as a special use." *Id.* Finally the court concluded, that "religious assemblies [had] a reasonable opportunity to build within the Village." *Id.*

As it relates to unreasonable limitations, the Eastern District of Pennsylvania has described RLUIPA as follows: "[f]rom the plain language of the statute it is clear that the purpose of this subsection is not to examine the restrictions placed on individual landowners, but to prevent municipalities from broadly limiting where religious entities can locate." *Adhi Parasakthi Charitable, Med., Educ., & Cultural Soc'y of N. Am. v. Twp. of W. Pikeland*, 721 F. Supp. 2d 361, 387 (E.D. Pa. 2010).

In accord with *Vision Church*, what is "reasonable" under the circumstances cannot be determined at the summary judgment stage in light of the aforementioned disputed issues of material fact. In alignment with RLUIPA's broad construction to protect religious exercise to the maximum extent allowed by the Constitution, the land use regulation here may unreasonably limit efforts to secure a religious home. In light of all the facts presented, there are questions

28

regarding the availability of land in Bridgewater for religious institutions in general as a result of the Ordinance. Plaintiff argues that the Ordinance now restricts houses of worship from over 75% of the previously available land. This assertion supports the existence of a disputed issue of material fact. For the reasons set forth above, the Defendant's motion for summary judgment as it relates to Count VII is denied.

### 8.     Count VIII: RLUIPA Equal Terms

#### a.     Standard

Count VIII alleges that Defendant violated RLUIPA's Equal Terms provision, which provides: "No government shall impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution."   42 U.S.C. § 2000cc(b)(1). In order to establish a violation of RLUIPA's Equal Terms provision, Plaintiff must demonstrate "a secular comparator that is similarly situated as to the regulatory purpose of the regulation in question-similar to First Amendment Free Exercise jurisprudence." *Lighthouse Inst. for Evangelism, Inc. v. City of Long Branch*, 510 F.3d 253, 264 (3d Cir. 2007).

> [A] plaintiff asserting a claim under the RLUIPA Equal Terms provision must show (1) it is a religious assembly or institution, (2) subject to a land use regulation, which regulation (3) treats the religious assembly on less than equal terms with (4) a nonreligious assembly or institution (5) that causes no lesser harm to the interests the regulation seeks to advance.

*Id.* at 270. "RLUIPA's Equal Terms provision operates on a strict liability standard . . . ." *Id.* at 269.  Moreover, controlling precedent provides that RLUIPA's Equal Terms provision does not include a strict scrutiny or substantial burden requirement.  *Id.* at 270.

#### b.     Parties' Positions

Plaintiff alleges that for purposes of the Equal Terms analysis, municipal facilities are comparable yet Plaintiff's facility is treated on less than equal terms. (Pl.'s Opp'n 40.) Defendant

argues that governmental uses "are not similarly situated to houses of worship, both because of the different manner in which they are regulated under New Jersey law, and because the regulatory purposes underlying [Ordinance] 11-03 are not similarly applicable to governmental uses." (Def.'s S.J. Mot. 42-43.)

### c.    Discussion

In *Lighthouse*, the Third Circuit analyzed an Equal Terms challenge. 510 F.3d at 272. The Third Circuit found that the religious entity therein was entitled to summary judgment as it related to the challenged ordinance. *Id.* at 273. In reaching this conclusion, the court examined the aims of the ordinance and determined that these aims were "not well documented." *Id.* at 272. The court recognized that the ordinance permitted "a range of different uses," including: "a restaurant, variety store and other retail store, educational service and college, [a]ssembly hall, bowling alley, and motion picture theater, governmental service, municipal building, new automobile and boat showroom, and High Technology-Light Industrial." *Id.* (internal quotations omitted). Ultimately, the court held that it was "not apparent from the allowed uses why a church would cause greater harm to regulatory objectives than an 'assembly hall' that could be used for unspecified meetings." *Id.* Accordingly, the Third Circuit remanded to the district court for entry of summary judgment in favor of the religious entity. *Id.* at 272-73.

In the same case, the Third Circuit separately analyzed the defendant municipality's Redevelopment Plan which "strictly limited the use of properties" within the "Broadway Corridor" of the town. *Id.* at 258. The Redevelopment Plan intended to create a retail-focused main street and a "vibrant" and "vital" downtown community. *Id.* at 270. The Third Circuit held that a New Jersey statute precluded the issuance of liquor licenses in close proximity to houses of worship. *Id.* Thus, the court stated that "[a]lthough there may be room for disagreement over

Long Branch's prioritizing of the availability of alcohol consumption over the ability to seek spiritual enlightenment, it is clear that [the town] could not create a downtown area . . . if [it] could not issue liquor licenses throughout that area." *Id.* at 272. Thus, the Third Circuit determined that the municipality was entitled to summary judgment as it related to the Redevelopment Plan because the religious entity "placed no evidence in the record that the [regulatory plan] treats a religious assembly on less than equal terms with a secular assembly that would cause an equivalent negative impact on Long Branch's regulatory goals." *Id.*

In the instant matter, Defendant advances that the aim of Ordinance 11-03 is to preserve the residential character of its various neighborhoods. (Def.'s S.J. Mot. 45.) Defendant states that the Township's governmental uses are not similarly situated to houses of worship as it relates to the purpose of Ordinance 11-03. (*Id.*) In support of this, Defendant asserts that "its active recreational sites not in or adjoining the Regional Center are unlighted, protecting the quiet night time character of adjoining residential neighborhoods . . . and those that have lighted fields are confined to the Regional Center." (*Id.* at 46 n.5.) Defendant Township further argues that governmental uses are not valid comparators because their immunity from local zoning renders governmental assemblage dissimilar for purposes of Equal Terms analysis. (*Id.* at 45.)

The Court recognizes Defendant's objective as a need "to maintain and improve residential neighborhoods without undue intrusion from traffic, noise, light and degraded air quality." (ECF No. 7-10, 7.) With this objective at the heart of the Court's analysis, the Court notes that in R-50, where the Property is located, "municipal buildings, parks, playgrounds or other municipal facilities as are deemed necessary and appropriate by the governing body" are permitted uses. (Pl.'s Opp'n 42.) Houses of worship, however, are subject to a principal access requirement and are conditional uses. (*Id.*) Plaintiff argues that municipalities operate facilities

including public libraries and town meeting halls. (*Id*. at 39.) As it relates to traffic generation, Plaintiff submits that "many municipal facilities generate substantially greater traffic volume than houses of worship." (*Id*. at 40.) Thus, giving Plaintiff the benefit of all reasonable inferences, summary judgment is inappropriate. The Court cannot rule as a matter of law that the Ordinance treats religious assemblies on equal terms with non-religious assemblies as it relates to the purpose of Ordinance 11-03.

### D.     Plaintiff's State Law Claims

#### 1.     Exhaustion of Administrative Remedies

Defendant alleges that the "doctrine of exhaustion requires dismissal of Counts II [alleged violation of the New Jersey Constitution's right to free exercise of religion], IV [alleged violation of the right to equal protection under the New Jersey Constitution], and IX [alleging that Ordinance 11-03 is arbitrary, capricious and unreasonable]" of the second amended complaint based on Plaintiff's failure "to exhaust administrative remedies by seeking a conditional use variance from the Zoning Board." This procedural argument is not persuasive in light of Judge Pisano's ruling regarding the nature of Plaintiff's claims. As noted earlier, Plaintiff has filed facial challenges to Ordinance 11-03. Exhaustion of administrative remedies—in this case, seeking a conditional use variance—is not required before challenging Ordinance 11-03, as Plaintiff does in Counts II, IV and IX. *See County Concrete*, *supra*.

#### 2.     Merits of Plaintiff's Claim that Ordinance 11-03 is Arbitrary, Capricious and Unreasonable

In addition to alleging that Count IX of the Complaint should be dismissed for failure to exhaust administrative remedies, Defendant contends that it is entitled to summary judgment regarding the alleged arbitrary, capricious and unreasonable nature of Ordinance 11-03. Specifically, Defendant alleges that Ordinance 11-03 comports with the criteria in *Riggs v. Long*

*Beach Twp.*, 109 N.J. 601, 611 (1988). The Court does not find Defendant's argument persuasive.

As noted earlier, Plaintiff alleges the following disputed facts regarding this issue: (1) that the Ordinance was passed to preclude Al Falah's application; (2) that traffic studies did not reveal any traffic problems arising from the proposed mosque; (3) that there was no study of the volume or time of traffic peaks on any roadway in preparation of the 2011 Reexamination Report; and (4) that the roads which were permitted by Ordinance 11-03 exhibited the same characteristics of winding, steep slopes and limited visibility as the local roads excluded by the Ordinance. (Pl.'s SUMF ¶¶ 4.1, 4.5, 4.15; Def.'s Resp. ¶¶ 4.1, 4.5, 4.15.) Plaintiff further relies upon the New Jersey Supreme Court's Decision in *Riya Finnegan LLC v. Township Council of Township of S. Brunswick*, as directly illuminating whether the actions of Defendant were arbitrary, capricious or unreasonable. 197 N.J. 184, 187 (2008) (Pl.'s Opp'n 46-48.) Defendant contends that *Riya Finnegan* is factually inapposite. (Def.'s Reply 24.)

*Riggs* held that "[a] zoning ordinance is insulated from attack by a presumption of validity," which may be overcome by a showing that the ordinance is "clearly arbitrary, capricious or unreasonable, or plainly contrary to fundamental principles of zoning or the [zoning] statute." *Riggs*, 109 N.J. at 610-11 (alteration in *Riggs*) (quoting *Bow & Arrow Manor v. Town of W. Orange*, 63 N.J. 335, 343 (1973)). "The party attacking the ordinance bears the burden of overcoming the presumption . . . ." *Riggs*, 109 N.J. at 611. The *Riggs* court outlined four criteria to consider when determining the validity of an ordinance.

"First, the ordinance must advance one of the purposes of the Municipal Land Use Law as set forth in [N.J. Stat. Ann. §] 40:55D-2." *Id.* (citing *Taxpayers Ass'n of Weymouth Twp., Inc. v. Weymouth Twp.*, 80 N.J. 6, 21 (1976)). "Second, the ordinance must be 'substantially

consistent with the land use plan element and the housing plan element of the master plan or designed to effectuate such plan elements,' [N.J. Stat. Ann. §] 40:55D-62, unless the requirements of that statute are otherwise satisfied." *Id*. "Third, the ordinance must comport with constitutional constraints on the zoning power, including those pertaining to due process, . . . equal protection, . . . and the prohibition against confiscation . . . ." *Id*. at 611-12 (internal citations omitted). "Fourth, the ordinance must be adopted in accordance with statutory and municipal procedural requirements." *Id*. at 612 (citing P. Rohan, *Zoning & Land Use Controls* § 36.02[1] at 36-15 (1986)).

The Court has concluded that Defendant's Motion for Summary Judgment on this issue must be denied. First, the Court finds Plaintiff's reliance on *Riya Finnegan* appropriate. Defendant's argument that *Riya Finnegan* should be distinguished because, in that case, the "municipality rezoned *only the plaintiff's property*" following an earlier approval from the planning and zoning board is not persuasive. While the fact that the rezoning in *Riya Finnegan* supported the New Jersey Supreme Court's holding that the defendant had engaged in impermissible inverse spot zoning, the temporal framework stressed by Defendant was not critical to that determination. *See Riya Finnegan*, 197 N.J. at 199 (defining inverse spot zoning as instances in which the "neighboring community . . . seeks to reap a benefit by imposing its particular view, contrary to the previously generated comprehensive plan, upon the specific parcel, to the detriment of the rights of that parcel's owner").

Second, and more importantly, there are fact issues regarding whether Defendant's actions comported with the requirements outlined in *Riggs*. The fact issues proffered by Plaintiff regarding the passage of Ordinance 11-03 and issues related to the traffic analysis underpinning Defendant's decision to rezone would, if true, indicate that Defendant may have acted in an

arbitrary and capricious manner. *See Riya Finnegan*, 197 N.J. at 194 ("generic complaints" about traffic concerns, not supported by evidence in the record, are not sufficient to support rezoning). Finally, and as noted in *Riya Finnegan*, even when a "municipality complie[s] with the technical requirements of the [MLUL]," it is incumbent upon a reviewing court to investigate the basis for the rezoning, especially when "a municipality [allegedly] responds to what may be baseless demands of some of its citizens" at the expense of "the rights of the few . . . ." *Id*. at 193-94 (citing *Lewis v. Harris*, 188 N.J. 415, 441 (2006)).

### 3.    Merits of Plaintiff's Uniformity Claim

Plaintiff has failed to file any substantive response to Defendant's argument that Count X should be dismissed.

"Even though Rule 56(e) requires a non-moving party to 'set forth specific facts showing that there is a genuine issue for trial', it is 'well-settled . . . that this does not mean that a moving party is automatically entitled to summary judgment if the opposing party does not respond.'" *Anchorage Assocs. v. V.I. Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990) (alteration in original) (citing *Jaroma v. Massey*, 873 F.2d 17, 20 (1st Cir. 1989)). In fact, "Rule 56(e) makes specific provision for this eventuality: '[i]f the adverse party does not so respond, summary judgment, *if appropriate,* shall be entered against the adverse party . . . .'" *Id*. (citation and quotation marks omitted) (emphasis added). Stated differently, the Court "must first determine whether summary judgment is appropriate-that is, whether the moving party has shown itself to be entitled to judgment as a matter of law." *Anchorage Assocs.*, 922 F.2d at 175. As such:

> Where the moving party has the burden of proof on the relevant issues, this means that the district court must determine that the facts specified in or in connection with the motion entitle the moving party to judgment as a matter of law. Where the moving party does not have the burden of proof on the relevant issues, this means that the district court must determine that the deficiencies in the opponent's

evidence designated in or in connection with the motion entitle the moving party to judgment as a matter of law.

*Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

Finally, and in combination with Local Civil Rule 56.1, a failure to oppose a motion for summary judgment can be "construed as [a]ffecting a waiver of the opponent's right to controvert the facts asserted by the moving party in the motion for summary judgment or the supporting material accompanying it." *Id.* at 175-76.

Here, although Plaintiff has opposed the Summary Judgment Motion in most respects, it has failed to include in that opposition any substantive response to Defendant's request for summary judgment dismissing Count X — Violation of Uniformity Requirement of the Municipal Land Use Law, N.J. Stat. Ann. § 40:55D-62(a). As such, the Court will determine if summary judgment is appropriate based upon the submissions of Defendant and a review of the Complaint.

N.J. Stat. Ann. § 40:55D-62(a) states that regulations in zoning ordinances "shall be uniform throughout each district for each class or kind of buildings or structure or use of land . . . but the regulations in one district may differ from those in other districts." Count X states that Ordinance 11-03 violates N.J. Stat. Ann. § 40:55D-62(a) because it 1) "requires that a house of worship be located on a state highway, county roadway or one of Four Road Segments . . . ," and 2) that those requirements are "not uniform within each zoning district because houses of worship may be located without access to a State highway or County roadway in some areas of residential districts while access to a State highway or County roadway is required in other areas within the same districts." (Compl. ¶¶ 138-39.)

Defendant argues that the concept of conditional uses, which "contemplates that a particular use, such as a house of worship, may meet the conditional use standards and be

permitted on some properties within a zoning district . . . [and not in] others" does not violate § 40:55D-62(a) because conditional uses are compatible with the uniformity requirement. (Def.'s Mot. 58.) This is allegedly so because Ordinance 11-03 "treats equally all *classes* of uses or structures that fall within its purview." (*Id.* at 59.) Stated differently, the "notion of uniformity [allegedly] does not prohibit classifications within a district so long as they are reasonable and so long as all similarly situated property receives the same treatment." (*Id.*)

Plaintiff's complaint seemingly argues that Ordinance 11-03 violates the uniformity principle because it will allow certain *pre-existing* houses of worship to be located at sites which do not have access to a State highway or County roadway while its application (and other houses of worship in the future) will be required to choose sites with such access or seek a variance in order to be located at a site without such access. (*See* Compl. ¶¶ 58, 139.)

"Uniformity [need not be] absolute and rational regulations based on different conditions within a zone are permissible so long as similarly situated property is treated the same. Reasonableness of classification is the key." *Rumson Estates, Inc. v. Mayor & Council of Borough of Fair Haven*, 177 N.J. 338, 359 (2003). Here, and as noted above, there are fact issues regarding whether or not Ordinance 11-03 is a reasonable expression of Defendant's zoning powers. *See also id.* at 357 (a main concern of the "uniformity requirement was, and continues to be, the constitutional guarantees of due process and equal protection that guard against the arbitrary and unreasonable exercise of the police power") (citing *Roselle v. Wright*, 21 N.J. 400, 409-10 (1956)). As such, summary judgment is inappropriate at this juncture.

### 4.    Plaintiff's New Jersey LAD Claim Cannot Survive Defendant's Jurisdictional Challenge

Defendant contends that Plaintiff's NJLAD claim brought pursuant to N.J. Stat. Ann. § 10:5–12.5 must be dismissed for lack of jurisdiction. The Court agrees. Three District of New

Jersey cases have explored this issue and the Court here will follow those decisions. *See Kessler Inst. for Rehab., Inc. v. Mayor & Council of Borough of Essex Fells*, 876 F. Supp. 641, 664-65 (D.N.J. 1995) (dismissing a plaintiff's NJLAD claim for lack of subject matter jurisdiction because N.J. Stat. Ann. "§ 10:5–12.5, [which makes] it unlawful for a municipality to discriminate in its land use and housing policy, requires those claims to be brought in New Jersey Superior Court . . . ."); *Mount Holly Citizens In Action, Inc. v. Twp. of Mount Holly*, No. 08-2584 (NLH), 2009 WL 3584894, at *7-8 (D.N.J. Oct. 23, 2009) (same); *Lapid Ventures, LLC v. Twp. of Piscataway*, No. 10-6219 (WJM), 2011 WL 2429314, at *6 (D.N.J. June 13, 2011) (same). As such, Count XI is dismissed with prejudice.

### E.    Plaintiff's Motion for Preliminary Injunction

The Court considers four factors when determining the propriety of a preliminary injunction. This four factor test requires a demonstration: (1) of irreparable injury; (2) of a likelihood of success on the merits; (3) that a balance of the hardships favors the party seeking the injunction; and (4) that an injunction would serve the public interest. *See eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).

#### 1.    Irreparable Injury

##### a.    Parties' Positions

Plaintiff argues that it has established irreparable injury in two forms: (1) that any loss of First Amendment rights, even briefly, constitutes irreparable injury, and (2) each piece of real property is inherently unique rendering money damages inadequate compensation. (Pl.'s Mot. 57, 58.)

Defendant argues, without the benefit of any supporting case law, that any alleged harm regarding the loss of Plaintiff's First Amendment rights is of the Plaintiff's own making. (Def.'s

Opp'n 42.) Specifically, Defendant argues that Plaintiff, pursuant to Ordinance 11-03, is required to make an application for a variance and that such a requirement does not constitute irreparable harm. (*Id*. at 43.) Defendant further argues that Plaintiff's assertion that money damages are inadequate as it relates to real property is undermined by Al Falah's "failure to prosecute an application for a conditional use variance." (*Id*.)   Defendant also argues that *Cottonwood Christian Center v. Cypress Redevelopment Agency*, which Plaintiff relies upon for the proposition that the unique nature of real property is sufficient for a showing of irreparable harm, is distinguishable from the instant action. 218 F. Supp. 2d 1203 (C.D. Cal. 2002).

### b.    Discussion

Plaintiff relies on *Elrod v. Burns* for the proposition that "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." 427 U.S. 347, 373 (1976).  The *Elrod* Court defined the issue before it as "whether public employees who allege that they were discharged or threatened with discharge solely because of their partisan political affiliation or nonaffiliation state a claim for deprivation of constitutional rights secured by the First and Fourteenth Amendments." *Id.* at 349. In that instance, the Supreme Court found that "the Court of Appeals might properly have held that the District Court abused its discretion in denying preliminary injunctive relief." *Id.* at 374.

The Court finds the Fifth Circuit's holding in *Opulent Life v. City of Holly Springs* instructive. 697 F.3d 279 (5th Cir. 2012). The *Opulent Life* court, after determining that a ripeness challenge provided no defense regarding a facial challenge to an ordinance, reversed the district court's denial of an injunction for failure to establish irreparable injury. *Id.*  The Fifth Circuit determined that the plaintiff "satisfied the irreparable-harm requirement because it ha[d] alleged violations of its First Amendment and RLUIPA rights." *Id.* at 295. The Fifth Circuit,

relying on *Elrod*, found that an alleged deprivation of constitutional rights is tantamount to irreparable harm in the RLUIPA context "because RLUIPA enforces First Amendment freedoms" and must be construed "broadly to protect religious exercise." *Id.*

Factually, the *Opulent Life* court relied on evidence in the record that the plaintiff had to forego programs essential to its religious mission and had found its religious mission otherwise frustrated. *Id.* The court found that the record demonstrated evidence of ongoing harm to the plaintiff's religious practice. *Id.* While resolving the irreparable injury inquiry primarily on the grounds of First Amendment encroachment, the Fifth Circuit also noted that a "deprivation of an interest in real property constitutes irreparable harm." *Id.* at 297 (internal citation omitted).

The Plaintiff here has similarly demonstrated irreparable harm. By way of example, Plaintiff has alleged several injuries to religious exercise.[9] Plaintiff is without a permanent spiritual home, which has impeded its growth and its capacity to raise money for its programs. Without a permanent mosque, Plaintiff is unable to attract a permanent Imam, or spiritual leader. These combined factors, among others, have rendered it nearly impossible for Al Falah and its individual members to adhere to the tenets of their religion. (Pl.'s Mot. 48.)

Alternatively, as the Property is Plaintiff's intended place of worship, Al Falah "possesses a unique interest in its place of worship that cannot be remedied by an award of compensation or a monetary reward." *Third Church of Christ, Scientist, of New York City v. City of New York*, 617 F. Supp. 2d 201, 215 (S.D.N.Y. 2008) *aff'd*, 626 F.3d 667 (2d Cir. 2010). On a more basic level, "where interests involving real property are at stake, preliminary injunctive relief can be particularly appropriate because of the unique nature of the property interest." *Minard Run Oil Co. v. U.S. Forest Serv.*, 670 F.3d 236, 256 (3d Cir. 2011), as amended (Mar. 7,

---

[9] "[C]ourts may not inquire into the truth, validity or reasonableness of claimant's religious beliefs." *Hobbie v. Unemployment Appeals Comm'n of Fla.*, 480 U.S. 136, 144 n.9 (1987).

2012) (internal citations and quotations omitted). The Court finds that Plaintiff has demonstrated irreparable injury.

### 2.      Likelihood of Success on the Merits

Plaintiff dedicates the vast majority of its preliminary injunction motion to its RLUIPA claim. In addition, the Court recognizes that the "fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them." *Lighthouse*, 510 F.3d at 261. Therefore, the Court will limit its likelihood of success on the merits analysis to Plaintiff's substantial burden claim under RLUIPA.

### a.      Parties' Positions

Relying on the proposition in *Westchester Day School v. Village of Mamaroneck* that "a burden need not be found insuperable to be held substantial," Plaintiff argues that it has been substantially burdened by the Ordinance, which "has effectively paralyzed Al Falah's effort to establish a religious home." (Pl.'s Mot. 48) (citing 504 F.3d 338, 349 (2d Cir. 2007)). In this regard, Plaintiff argues that it has suffered delay, uncertainty and expense which are indicative of substantial burden. (Pl.'s Mot. 47.) Plaintiff further asserts that it is without an economically feasible alternative. (*Id*. at 49.) Defendant argues that Plaintiff cannot demonstrate that Ordinance 11-03 imposes a substantial burden on Al Falah's religious exercise since Al Falah has failed to prosecute an application for a conditional use variance. (Def.'s Opp'n 29.)

### b.      Discussion

### i.      Substantial Burden

In *Cottonwood Christian Center v. Cypress Redevelopment Agency*, Cottonwood, the plaintiff religious entity sought to build a church in the City of Cypress. 218 F. Supp. 2d at 1209.

Cottonwood, unable to obtain the proper permits, brought suit. *Id.* Cypress sought to use the property purchased by Cottonwood to develop commercial retail space. *Id.* Cottonwood moved for an injunction. *Id.* In analyzing whether Cottonwood demonstrated a substantial burden, the court reasoned that "preventing a church from building a house of worship means that numerous religious services cannot be performed. RLUIPA appears to recognize this concern by specifically defining the use[,] building or conversion of real property for the purpose of religious exercise as the type of religious exercise that cannot be substantially burdened absent a compelling interest." *Id.* at 1226 (internal citation and quotation omitted).

The *Cottonwood* court defined substantial burden as government action "prevent[ing] [an individual] from engaging in conduct or having a religious experience which the faith mandates." *Id.* at 1227. This definition is, in substance, equivalent to the definition of substantial burden applied in the Third Circuit. *See Washington v. Klem*, 497 F.3d 272, 278 (3d Cir. 2007) (a substantial burden exists where one is forced "to choose between following the precepts of her religion and forfeiting benefits, on the one hand, and abandoning one of the precepts of her religion in order to accept work, on the other hand."). The Court in *Cottonwood* indicated that the plaintiff demonstrated that: (1) obtaining the property for the proposed church was a five year endeavor; and (2) a religious need to have a large and multi-faceted church. 218 F. Supp. 2d at 1227.

Similarly here, and as discussed in relation to the immediate and irreparable harm standard, Plaintiff has shown a substantial burden. Specifically, Plaintiff has indicated that an alternative site is unavailable and that the rented facilities used over the last decade have precluded Plaintiff from effectively exercising its religious tenets. (Compl. ¶ 1) (indicating that Plaintiff sought an appropriate property for over a decade). Accordingly, Plaintiff has

42

demonstrated a substantial burden. The substantial burden suffered by Plaintiff is not undermined by the fact that Al Falah has not sought a variance because the ultimate decision makers on appeal are the council against whom allegations of discrimination are the subject of this action.[10]

### ii.    Compelling State Interest

Under RLUIPA, once a religious institution has demonstrated that its religious exercise has been substantially burdened, the burden of proof shifts to the municipality to prove that it acted in furtherance of a compelling governmental interest and that its action is the least restrictive means of furthering that interest. *Westchester*, 504 F.3d at 353 (internal citation omitted). To qualify as a compelling state interest, the alleged interest must be among "interests of the highest order." *Lukumi*, 508 U.S. at 546.

In *Cottonwood*, the defendant asserted that its compelling state interest was its goal to alleviate blight. 218 F. Supp. 2d at 1228. The court determined that blight can constitute an aesthetic harm and trigger a substantial governmental interest. *Id.* The court, however, determined that no compelling interest was advanced where the City was not compelled to take action until after the purchase of the property. *Id*. The *Cottonwood* court noted that following the plaintiff's application, the defendant became a "bundle of activity." *See Cottonwood,* 218 F. Supp. 2d at 1225 (indicating that there was circumstantial evidence of discriminatory intent where for nearly a decade the Cottonwood Property sat vacant with no improvements made, but

---

[10] Plaintiff has indicated that the Zoning Board's power to grant a conditional use variance is limited. Specifically, Plaintiff would have to establish that the proposed use would not impair the intent of the zoning ordinance. N.J. Stat. Ann § 40:55D-70. Plaintiff argues that its application was pending and fatally undermined by the enactment of Ordinance 11-03. This inferentially supports the assertion that Al Falah's application was the "target" of Ordinance 11-03. Al Falah argues that it therefore would likely be unable to establish that its proposed mosque would not upset the purpose of the Ordinance. The Court agrees.

once Cottonwood purchased the land, the City became a "bundle of activity" and developed the Town Center and the Walker/Katella Retail Project for the LART Plan Area.).

Similarly here, the temporal nexus between the application and the implementation of the Ordinance undermines Defendant's claim that the Ordinance was in furtherance of a compelling governmental interest. However, even if Defendant could show that its interest in preservation of residential character in the instant matter rose to the level of a compelling interest, Defendant is not likely to demonstrate that Ordinance 11-03 is the least restrictive means of advancing that interest, as discussed below.

### iii.    Least Restrictive Means

Defendant bears the burden of producing evidence that it implemented the least restrictive means of advancing a compelling governmental interest. In opposition to the preliminary injunction motion, Defendant asserts that the road access condition is the least restrictive means to further its compelling governmental interest. However, Township Planner Scarlett Doyle did not consult with anyone regarding which roads should be permitted. (Pl.'s SUMF ¶ 1.68.) It is not clear what, if any, alternative means the Township considered before expeditiously passing Ordinance 11-03. Accordingly, Plaintiff has demonstrated a likelihood of success on the merits as it relates to its claim under RLUIPA of a substantial burden being imposed on religious exercise.

### 3.    Balance of the Hardships

Plaintiff argues that a balance of the hardships weigh in favor of granting a preliminary injunction. (Pl.'s Mot. 58.) Plaintiff asserts that the injunction merely calls for the planning board to process Plaintiff's application, and if any concerns are raised, the process itself affords an opportunity for exploration of said potential concerns. (*Id*.) Defendant argues that any harm

demonstrated is a product of Plaintiff's own decision-making. (Def.'s Opp'n 44.) Specifically, Defendant argues that Plaintiff did not apply for a variance. (*Id.*)

The Court finds that the balance of the hardships favors an injunction. Plaintiff continues to suffer the harms outlined under the irreparable injury analysis. Defendant has failed to identify any specific harm that would follow from permitting Plaintiff's application to proceed.

### 4. Public Interest

As it relates to the public interest, Plaintiff argues that RLUIPA "identified a strong public interest in prohibiting local governments from frustrating religious land uses." (Pl.'s Mot. 58.) Plaintiff also argues that New Jersey, through its enactment of the time of application law, sought to preclude local officials from frustrating land use applications by changing the law. (*Id.* at 58-59.) Defendant argues that "while RLUIPA constitutes a governmental assist to religious land owners, the case law interpreting RLUIPA shows that it was not intended to allow religious land owners to run roughshod over municipalities or to usurp municipalities' right and obligation to zone in the public interest." (Def.'s Opp'n 44.)

The Court finds that the public interest factors weigh in favor of Plaintiff. Although both Defendant and Plaintiff assert meaningful public policy interests, Plaintiff's allegations fall squarely within the harm Congress sought to address in enacting RLUIPA. Therefore, an injunction would further the public interest.

### III. <u>Conclusion</u>

For the reasons set forth above, Defendant's Motion for Summary Judgment[11] is GRANTED in part, and DENIED in part. Defendant's Motion is granted as it relates to

---

[11] Defendant's Summary Judgment Motion also seeks to dismiss from the Second Amended Complaint the individual defendants named in their official capacities. Defendant relies on *Bass v. Attardi*, 868 F.2d 45, 51 (3d Cir. 1989), for the assertion that "official capacity suits . . .

Plaintiff's NJLAD claim (Count XI). Defendant's Motion for Summary Judgment is DENIED as to all other counts. Plaintiff's Motion for Preliminary Injunction is GRANTED. An order consistent with this Opinion will be entered.


_____s/ Michael A. Shipp_____
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**


Dated: September 30, 2013

---

represent only another way of pleading an action against an entity" and "an official capacity suit is, in all respects other than name, to be treated as a suit against the entity." (internal citation and quotations omitted). (Def.'s S.J. Mot. 49.) Plaintiff responds that these cases do not *require* dismissal. (Pl.'s Opp'n 48-49.) The Court does not find that the public accountability concerns raised by Plaintiff require that the individual defendants remain in this action. As such, the individual defendants will be dismissed from this matter.